## SAUVE v. FLESCHUTZ.†

### In re PEWABIC CONSOLIDATED GOLD MINES CO.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

No. 4106.

1. BANKRUPTCY ☞323—CLAIMS—BONDS GIVEN AS COLLATERAL.
   Where two officers of a corporation became sureties upon notes of the corporation for $7,000, which were also secured by $30,000 of the corporate bonds, and thereafter the officers paid the notes and received the bonds from the bank, they can claim against the bankrupt corporation upon the bonds only the amount paid by them with interest.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 503, 505, 513; Dec. Dig. ☞323.]

2. BANKRUPTCY ☞323—CLAIMS—BONDS GIVEN AS COLLATERAL—INTEREST.
   Having been allowed the interest on the notes paid by them, they cannot also claim against the bankrupt's estate the amount of bonds issued in payment of that interest.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 503, 505, 513; Dec. Dig. ☞323.]·

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Claim by Ida C. Fleschutz against David B. Sauve, trustee, in the matter of the Pewabic Consolidated Gold Mines Company, bankrupt. From an order of the District Court allowing the claim in part, the trustee appeals. Reversed and remanded, with directions.

Leroy J. Williams, of Denver, Colo., for appellant.

J. E. Robinson, of Denver, Colo., for appellee.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

YOUMANS, District Judge. John C. Fleschutz and Ida Fleschutz, his wife, were president and secretary, respectively, of the Pewabic Consolidated Gold Mines Company, which was adjudicated a bankrupt on its petition on the 23d day of December, 1912. Ida C. Fleschutz filed a claim for $53,285.49. The same was made up of the following items: First mortgage bonds of the bankrupt corporation amounting to $21,150, bonds to the amount of $30,000 deposited as collateral to secure the obligations of the corporation and which are alleged to have

been afterwards transferred in full payment of those obligations, overdue interest on bonds, amounting to $2,139.49.

The claim was allowed by the referee to the amount of $52,470. On review the District Court made the following order:

"That the claim of the said Ida C. Fleschutz be, and the same hereby is, allowed at the sum of $52,470 as a secured claim against said estate, as presented, provided, however, that, as to $30,000 of said claim, dividends thereon shall be paid to said claimant only to the extent of $7,000, with interest thereon at the rate of 8 per centum per annum, from the 1st day of April, A. D. 1911, and that upon the payment of such dividends the said claim shall be considered satisfied to the extent of $30,000, and no more, and that as to the remainder of said claim, to wit, $22,470 thereof, dividends shall be paid thereon to which said remainder shall be entitled. And it is further ordered that, as to all other matters shown in and by the certificate of said referee, the action of the referee be, and the same hereby is, sustained and approved."

There are 25 assignments of error, in which the good faith of the debt is attacked, and the rulings of the court as to the exclusion or admission of evidence are challenged. We find no prejudicial error in any of the rulings. The findings of the court are sustained by the evidence except as to the item of interest on the $30,000 in bonds.

[1] In 1909 Fleschutz and wife became sureties on two notes of the corporation to the First National Bank of Central City, Colo., for $4,000 and $3,000 respectively. The $3,000 note was attacked by petitioning creditors as not being a bona fide debt of the corporation. The referee found, however, from competent testimony, that it was the debt of the corporation, and this finding was approved by the District Court.

The referee found that $30,000 of the bonds of the corporation included in the claim of Ida C. Fleschutz were transferred to her absolutely by the First National Bank of Central City, Colo. The District Court made no finding upon this point, but its judgment providing that the dividends on the $30,000 in bonds should be applied to the payment of the $7,000 notes, and that after the payment of such notes in full from such dividends such bonds should be regarded as liquidated, is inconsistent with the idea that the bonds were held by Ida C. Fleschutz other than as collateral for said notes for $7,000.

On the 1st of April, 1911, John C. Fleschutz and Ida C. Fleschutz took up the two notes of $4,000 and $3,000 and substituted their note therefor, secured by a mortgage on property belonging to Ida C. Fleschutz.

On the 25th of March, 1911, the board of directors of the bankrupt corporation authorized the transfer to the bank of $30,000 in bonds in full payment of the two notes. The referee found that this arrangement was actually made, and that the notes were canceled and surrendered. The testimony does not bear this out, and, while the District Court does not say so in terms, the logical conclusion is that the finding of the referee on that point was reversed. The conclusion to be drawn from the testimony of John C. Fleschutz, and of Lake, the cashier of the bank, is that the bonds were not, in fact, accepted in payment of the notes; that they were held as collateral upon the promise of Fleschutz to pay the notes and take up the bonds. Fleschutz insisted that he was about to make the sale of an issue of bonds authorized by the bankrupt corporation on the 1st day of October, 1909, but which sale was never

effected. Upon the failure of Fleschutz to make the sale and raise the money, the bank accepted the note of Fleschutz and wife for the amount of the two notes, which note was secured by mortgage, as heretofore stated. The bank turned over to them the bonds. Fleschutz and wife were then in the attitude of sureties, having paid the debt of their principal, and were therefore subrogated to the collateral held by the creditor. 37 Cyc. 414. This, evidently, was the view taken by the District Court. Regarded as sureties, entitled to subrogation, Fleschutz and wife, or either one of them, could obtain no more from the collateral originally delivered to the creditor than the creditor itself could have done.

[2] The testimony tends to show that bonds were issued to Ida C. Fleschutz in payment of the accrued interest on the $30,000 in bonds, and that these bonds, paid on such interest, are included in the claim allowed by the referee and approved by the District Court. The judgment of the court provides that interest be allowed on the $7,000 note from its date, April 1, 1911. By the allowance of so much of the bonds as constitute interest, and by the allowance of interest on the note from its date, the effect will be to pay interest on the note twice, and to allow, in addition, an amount as an independent debt that should be applied to the payment of the note.

Carrying out the idea of the District Court, which we think is correct, that the $30,000 in bonds were to be regarded as collateral to the $7,000 note, the order of the District Court should have gone farther and should have deducted, from the amount of the claim allowed, the amount of the bonds delivered to Ida C. Fleschutz as payment of interest on the $30,000 in bonds. Just what that amount is does not clearly appear in the record. The interest on the entire $30,000 should have been deducted.

Since it cannot be accurately determined from the record what amount of interest on the $30,000 was included in the claim allowed, the decision of the lower court should be reversed and remanded, with directions to ascertain that amount of interest and deduct it from the claim, and it is so ordered.